IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION - TOLEDO

| | |
|---|---|
| In re: | Case No. 14-30821 |
| Amazing Grace Hotels, LLC | Chapter 11 |
| Debtor. | Bankruptcy Judge Mary Ann Whipple |

## TRUSTEE'S MOTION TO (1) APPROVE THE SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES WITH THE ASSUMPTION AND ASSIGNMENT OF DEBTOR'S GROUND LEASE AND (II) ESTABLISH SALE AND BIDDING PROCEDURES, INCLUDING SCHEDULING A SALE APPROVAL HEARING, WITH LOCAL RULE 9013 NOTICE

Now comes Douglas A. Dymarkowski, Chapter 11 Trustee (the "Trustee") for Amazing Grace Hotels, LLC (the "Debtor"), pursuant to sections 363 and 365 of title 11, United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and hereby moves for entry of an order authorizing and approving (I) the sale of the Debtor's hotel assets, and assumption and assignment of the Debtor's ground lease with the University of Toledo, to the highest and best bidder following an auction, free and clear of liens, claims, encumbrances, and interests, including any tax claims and rights or claims based on any successor or transferee liability; and (II) establishing the auction sale and bidding procedures, including scheduling a sale approval hearing following the auction.

## JURISDICTION

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8871901 _1

## BACKGROUND

2.      On March 17, 2014, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3.      Pursuant to the Agreed Order Resolving U.S. Trustee's Motion to Dismiss of May 1, 2014, (docket no. 55) and the U.S. Trustee's Application for Order Approving Appointment of Trustee (docket no. 58), Douglas Dymarkowski has been appointed as the Chapter 11 Trustee (docket no. 59) for the Debtor.

4.      The Debtor owns the hotel and conference center located at 3100 Glendale Avenue, Toledo, OH (the "Property"), which is presently being operated by the Trustee's property manager (and the former State-court appointed Receiver), TOOH Associates, LLC ("TOOH"), as a Radisson hotel.  During the receivership proceedings that preceded this action, TOOH executed a License Agreement with Radisson on December 3, 2013.  Since the Debtor is not a party to that License Agreement, it is not an asset of the bankruptcy estate, nor is it subject to the assignment and assumption procedures of section 365.  Upon information and belief, however, Radisson is interested in exploring possible assignment of that agreement to a successful bidder for the Property, which assignment would not involve the Trustee, the Debtor or this Court, other than ensuring that the Trustee and TOOH satisfy all obligations to Radisson for the period in which the Property is operated by TOOH for the Trustee.

5.      The Debtor does not own the land on which the Property is located but instead, is a party to a ground lease with The University of Toledo ("UT"), which was effective as of June 17, 1986 (as amended and modified, the "Ground Lease").  The Trustee proposes to assume the Ground Lease and assign it to the successful bidder for the Property, as part of the relief sought herein.

8871901 _1

6.     The Debtor's Property is subject to a perfected, first priority mortgage lien held by U.S. National Association, as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 (the "Noteholder").  It is anticipated that the Noteholder will consent to the sale process, subject only to the Noteholder having the right to credit bid at the auction pursuant to 11 U.S.C. § 363(k) as more fully set forth herein, which right the Trustee does not dispute.

7.     The Property is also subject to a mechanic's lien filed by I Do Chaircovers, LLC for $3,570.00, which was recorded on July 31, 2014 (and so may have been recorded in violation of the automatic stay, 11 U.S.C. § 362).  *See*, Title Search, attached hereto as Exhibit A.

## RELIEF REQUESTED

8.     The Trustee seeks authority to sell the Property and all of the personal property contained in it (collectively, the "Assets") pursuant to section 363(f) of the Bankruptcy Code, free and clear of all liens, claims and encumbrances, and to assume and assign the Ground Lease to the buyer of the Assets (the "Sale Transaction").

9.     By this Motion, the Trustee seeks entry of two related orders.  First, the Trustee requests entry of an order (the "Sale Procedures Order"), pursuant to 11 U.S.C. §§ 363 and Fed. R. Bankr. P. 2002 and 6004, (i) authorizing and approving the proposed procedures to govern the sale process for an online auction proposed to be conducted on **January 21, 2015**, provide for the submission of bids for the Assets and the form and manner of notice of the hearing to consider authorization and approval of the sale and (ii) establishing an objection deadline of **Friday, January 23, 2015 at 5:00 pm Eastern** time, and setting a hearing to consider the sale on **Wednesday, January 28, 2015 at 1:30 pm ET** (the "Sale Hearing").  Second, the Trustee requests entry of an order (the "Sale Order"), pursuant to 11 U.S.C. §§ 363(b), (f), and (m), and 365 and Fed. R. Bankr. P. 6004 and 6006, authorizing and approving the sale of the Assets to the

3

8871901 _1

successful bidder at the auction (the "Successful Bidder"), free and clear of liens, claims, encumbrances, and other interests, and the Trustee's assumption of the Ground Lease and assignment of it to the Successful Bidder. The proposed Sale Procedures Order, the proposed Sale Procedures (to be attached to the Sale Procedures Order) and the proposed Sale Order are attached hereto as Exhibits B, C and D, respectively.

10.     The Assets do not include any claims by the Debtor and/or the bankruptcy estate against any third parties with respect to recovery actions under §§ 544, 547, 548 and/or 550 of the Bankruptcy Code. The Assets do include the building, its contents (including furniture, bedding, inventory of items used in the hotel operations, etc.) and, to the extent that the State of Ohio authorizes it, the liquor license.

11.     In terms of personally identifiable information of customers (as defined in 11 U.S.C. § 101(41A), it is possible that the Sale Transaction will include the transfer of such information. As stated above, the Property is presently operated as a Radisson, which means that customer information is stored in the Radisson computer systems utilized for such operations. That information is protected pursuant to Radisson's privacy policy (a copy of which is attached hereto as Exhibit F). In the event that the ultimate purchaser of the Property either retains the Radisson franchise, or coordinates a transition period with Radisson, then such purchaser would be acquiring such customer information, subject to Radisson's privacy policy. In the event that the ultimate purchaser of the Property does not retain the Radisson relationship for any period of time, then such purchaser would not be acquiring any customer information.

12.     The Trustee has received a so-called stalking horse bid (i.e., an initial bid) from the Noteholder, in the form of a credit bid in the amount of $3.8 million (the "Stalking Horse Bid"). The Noteholder (or its designee/assignee that will ultimately participate in the auction) has not requested any breakup or topping fee or other expense reimbursement in connection with

the Stalking Horse Bid. Accordingly, the Debtor's estate has the benefit of a stalking horse bid by establishing a "floor" or minimum at the auction, and helping to create interest in the Property, without the cost of a third party stalking horse bid, which is often as much as 3% or 4% or more of the ultimate purchase price. In addition, the Noteholder has requested only a minimal initial topping bid (sufficient to cover the broker and marketing expenses), and so there is no concern about chilling bidding which can sometimes arise if the first initial overbid is very large. Accordingly, the Trustee submits that the proposed Stalking Horse Bid benefits the Debtor's estate with minimal burdens, if any, and so should be approved as part of the proposed bid procedures.

### PROPOSED SALE PROCEDURES AND NOTICE

13. The Trustee proposes to sell the Debtor's Assets via an online auction, with a live auctioneer (from the broker, described below) and real time bidding, on **January 21, 2015 at 1:00 pm ET** (noon CT), in accordance with the proposed terms of the Sale Procedures.

14. In connection with marketing, the Trustee previously obtained Court approval of the retention of an experienced, capable, national broker, CBRE, Inc. ("CBRE") to market the Assets prior to the proposed auction, and that process has been ongoing since they were retained on September 16, 2014 (docket no. 130). To date, CBRE has received more than one hundred (100) inquiries about the Assets as a result of its marketing and it has executed sixty (60) confidentiality agreements for the due diligence materials. A member of CBRE's experienced Auction Services team will conduct the auction as auctioneer.

15. As part of the proposed Sale Procedures, the Trustee proposes to send the Sale Procedures Order with attached final Sale Procedures to all parties who have appeared in this action, to all of the Debtors' creditors, and to all potential buyers identified to the Trustee by CBRE, as well as make it available in the due diligence materials. It is also noted that this

5

motion and all exhibits are being served upon all parties who have appeared in this action and all creditors, and that it is being made available to all potential buyers by including it in the due diligence materials for the Assets. Finally, the Trustee proposes that CBRE will publish notice of the auction in the Detroit edition of the Wall Street Journal and in the Toledo Blade, in a form substantially like that of Exhibit E attached hereto, and will file proof of same upon publication.

## THE SALE PROCEDURES SHOULD BE APPROVED

16.     Good and sufficient cause exists to approve the Sale Procedures. The Sale Procedures are in the best interests of the estate and its creditors and other parties because they will enable the Trustee to realize the maximum value from the sale of the Assets. Additionally, the Sale Procedures include appropriate noticing procedures to ensure all parties in interest will receive adequate notice of all relevant information.

17.     The schedule set forth in the proposed Sale Procedures is reasonable and justified, because the Property has already been in receivership for in excess of one year and then in this proceeding for another nine months during which time a replacement franchise was obtained and operations stabilized as much as possible, but continued operation under the protection of the Court is not a long term solution. Not only is continued operation in bankruptcy a challenge to the success of the business, but there are significant additional investments that must be made in the Assets in order to satisfy the requirements of the Radisson License going forward. It is estimated that the additional cost of the property improvement plan ("PIP") is approximately $2.0 million, and that a significant portion of those investments must be made beginning in the second quarter of 2015. However, the Trustee does not have any ability to make those investments, and the Noteholder has expressed that it is unwilling to fund such additional investments at this time, given that the Assets should be sold. Accordingly, it is essential that the

8871901 _1

sale process be concluded before the next significant PIP items become due under the Radisson License, in order to protect the ongoing operations under the Radisson name.

18. The schedule set forth in the proposed Sale Procedures provides for a reasonable marketing period for a property of this type, while also limiting its continued operation under Court protection and ensuring a sale before the next round of significant PIP expenditures must be made. The proposed Sale Procedures, combined with the marketing efforts of CBRE, will provide procedural safeguards and market checks that will enable any potentially qualified interested parties with an opportunity to come forward and make a competitive bid.

19. The Trustee submits that the notice set forth in the Sale Procedures constitutes good and sufficient notice of the Sale Procedures, the Sale Hearing and the Sale Transaction, and that no other or further notice need be given.

20. The notice to be provided via the Sale Procedures is reasonably calculated to provide all parties in interest (including parties with contingent claims) with the necessary information concerning the Sale Procedures, the Sale Hearing, and the Sale Transaction. Accordingly, the Trustee submits that the proposed notice is appropriate and sufficient under the circumstances.

21. The Sale Procedures and the method of service described herein and provided in the Sale Procedures Order fully comply with Bankruptcy Rule 2002 and constitute good and sufficient notice of the Sale Procedures, the Bid Deadline, the Sale Transaction, the relevant objection deadlines, the Sale Hearing, and all matters related thereto. Accordingly, the Trustee requests that the Court approve the form and manner of the notice substantially as proposed.

22. Finally, the Sale Procedures expressly recognize the Noteholder's right to credit bid pursuant to 11 U.S.C. § 363(k).

8871901 _1

## SALE OF THE ASSETS

23.     In accordance with Bankruptcy Rule 6004(f)(1), sales of property rights outside the ordinary course of business may be by private sale or public auction. The Trustee has determined that a public auction sale of the Assets in accordance with the proposed Sale Procedures will enable him to obtain the highest and best offer for the Assets, thereby maximizing the value of the estate, and is in the best interests of the Debtor and its creditors and other stakeholders.

24.     Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  To obtain court approval to sell property under section 363(b) outside of any plan of reorganization in Chapter 11, the Trustee must show "some articulated business justification" for the proposed sale.  *Stephens Indus, Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986), *quoting In re Lionel Corporation*, 722 F.2d 1063, 1070 (2d Cir. 1983).  Stated differently, "a bankruptcy court can authorize a sale of all of a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action." *Id.* at 390.

25.     The "sound business purpose" test has four requirements:

    (1)    a sound business reason;

    (2)    adequate and reasonable notice;

    (3)    adequate price; and

    (4)    good faith.

*In re Country Manor of Kenton, Inc.*, 172 B.R. 217, 220-221 (Bankr. N.D. Ohio 1994), *quoting In re Plabell Rubber Products, Inc.*, 149 B.R. 475, 479 (Bankr. N.D. Ohio 1992).

26.     In this case, the Trustee has concluded that continued operations under the

protection of a Court is not good for business and in particular, there are upcoming PIP obligations under the Radisson License that the Trustee will be unable to meet. Thus, in order to preserve the value of the Radisson License and ongoing operations, it is necessary to seek a sale on a schedule that is quicker and more efficient than the plan confirmation process.

27. The notice proposed is adequate and reasonable. It is designed to ensure that all parties with an interest receive notice of the sale, and will ensure that all creditors and all potentially interested parties will have complete, accurate information regarding the proposed sale process.

28. Because the ultimate sale price for the Assets will be determined by the market after a full and fair marketing period by a professional specializing in this type of asset, the resulting price will be adequate.

29. Finally, again because the process contemplates public marketing to third parties through a public process overseen by this Court, the resulting buyer will qualify as a good faith purchaser.

30. The fact that the Noteholder will be permitted to credit bid up to its secured lien of approximately $12,000,00.00, does not change this analysis, because other than its statutory right to credit bid and waiver of the deposit requirement, the Noteholder has to comply with all of the other procedures that any other bidder must comply with.

## THE SALE TRANSACTION MUST BE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, INCLUDING RIGHTS OR CLAIMS BASED ON SUCCESSOR OR TRANSFEREE LIABILITY

31. It is appropriate that the Assets be sold free and clear of liens, claims, encumbrances, and interests, including rights or claims based on any successor or transferee liability, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code with any such liens,

9

claims, encumbrances, or interests to attach to the net sale proceeds of the Assets. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding. to accept a money satisfaction of such interest.

11 USC § 363(f).

32.     To facilitate the sale of the Assets, it is necessary to authorize the sale of the Assets free and clear of any and all liens, claims, encumbrances, or interests, including rights or claims based on any successor or transferee liability, with any such liens, claims, encumbrances, or interests to transfer to and attach to the net proceeds of the sale with the same rights and priorities therein.

33.     The liens, claims, encumbrances, and interests held by creditors may be satisfied by at least one of the five conditions set forth in section § 363, and any such liens, claims, encumbrances, and interests will be adequately protected by transfer to and attachment to the net proceeds of the sale of the Assets, subject to any claims and defenses the Debtor may possess with respect thereto.

34.     In this case, with respect to the Assets, there is the first priority lien of the Noteholder, who consents to this transaction.

8871901 _1

35. The only other lien on the Assets is the recent mechanic's lien of I Do Chaircovers. Since that is a lien for which the holder could be compelled to accept a money satisfaction, it is subject to the provisions of 363(f).

36. Thus, the sale of the Assets free and clear of liens, claims, encumbrances, and interests, including rights or claims based on any successor or transferee liability will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code. Accordingly, the Assets should be transferred to the successful bidder free and clear of all liens, claims, encumbrances, and interests with such liens, claims, encumbrances, and interests to be transferred to and attach to the net sale proceeds of the Assets.

## THE APPOINTMENT OF A CONSUMER PRIVACY OMBUDSMAN IS NOT NECESSARY

37. Section 363(b)(1) of the Bankruptcy Code provides that if a debtor "in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals [and] such policy is in effect on the date of the commencement of the case," then the debtor "may not sell ... personally identifiable information to any person unless" the sale is "consistent with such policy" or a "consumer privacy ombudsman" is appointed. 11 U.S.C. § 363(b)(1). The term "personally identifiable information" defined in section 101(41A) of the Bankruptcy Code, means private information about a debtor's customers that "if disclosed, will result in contacting or identifying [an] individual physically or electronically" (e.g., name, address, telephone number, social security number, credit card account number, birth date). *Id.* § 101 (41A).

38. Section 332 of the Bankruptcy Code governs the appointment of a consumer privacy ombudsman and provides that the Court "shall order the United States trustee to appoint, not later than 5 days before the commencement of the [sale] hearing, 1 disinterested person to serve as the consumer privacy ombudsman in the case and shall require that notice of such

hearing be timely given to such ombudsman." *Id.* § 332(a). The consumer privacy ombudsman "may appear and be heard at [the sale] hearing and shall provide to the [C]ourt information to assist the [C]ourt in its consideration of the facts, circumstances, and conditions of the proposed sale … of personally identifiable information." *Id.* § 332(b).

39.     In this case, it is possible that the Sale Transaction will include information within these provisions if the Successful Bidder (or Backup Bidder) continues to operate the Property as a Radisson for any period of time.  In that event, however, the Successful Bidder will be required to comply with Radisson's privacy policy and therefore, a privacy ombudsman is not required under the statute.

### ASSUMPTION AND ASSIGNMENT OF GROUND LEASE AND ANY OTHER EXECUTORY CONTRACTS THE SUCCESSFUL BIDDER MAY SELECT SHOULD BE AUTHORIZED

40.     Because the Property is built on land subject to the Ground Lease, the Successful Bidder (and if the Successful Bidder fails to close, the Back-up Bidder) must receive assignment of the Ground Lease to be able to acquire the Property.  The Trustee proposes to promptly share the Qualified Bids and all supporting information with the University of Toledo so that it can perform any due diligence and ensure that it has sufficient adequate assurance of future performance with respect to the Qualified Bidders, and then have the opportunity to object to the assumption and assignment of the Ground Lease at the Sale Hearing.  Upon information and belief, all prepetition defaults under the Ground Lease were cured during the receivership, and there have been no post-petition defaults that require any cure.

41.     The Trustee is not presently aware of any other executory contracts or unexpired leases of the Debtor that Prospective Bidders may be interested in.  In this regard, because the Radisson License Agreement is with TOOH (executed when TOOH was the State-Court appointed receiver for the Debtor), it is not subject to the assumption and assignment process.

12

Instead, the Radisson License will either be terminated upon the sale, or else Radisson and the Successful Bidder (or Back-up Bidder) will make their own arrangements for assignment.

42.     In the event that there is/are any other executory contract(s) and/or unexpired lease(s) of the Debtor that the Successful Bidder (or Back-up Bidder) would like to have assigned, the Trustee will provide the Bid and related financial information to the non-Debtor party, who then will have the opportunity to object to the assumption and assignment as part of the Sale Hearing.

## NOTICE

43.     Notice of this Motion has been provided to all parties who have appeared in this action as reflected in the Certificate of Service, as well as all creditors listed in the Debtor's schedules and to I Do Chaircovers, whose interest was revealed in a recent title report.

WHEREFORE, the Trustee respectfully requests (i) entry of the proposed Sale Procedures Order substantially in the form attached hereto as Exhibit B, with the Sale Procedures to be attached thereto, substantially in the form attached hereto as Exhibit C, and then following the Auction and Sale Hearing, (ii) entry of the Sale Order in the form substantially attached hereto as Exhibit D, and (iii) such other and further relief as this Court deems just and proper.

Dated: December 22, 2014               Respectfully submitted,

                                        /s/ *Patricia B. Fugée*
                                        Patricia B. Fugée (0070698)
                                        Roetzel & Andress, LPA
                                        One SeaGate, Suite 1700
                                        Toledo, Ohio 43604
                                        Telephone:    (419) 254-5261
                                        Facsimile:    (419) 242-0316
                                        E-mail:pfugee@ralaw.com
                                        *Counsel for Doug Dymarkowski Chapter 11*
                                        *Trustee*

8871901 _1

## Notice Pursuant to Local Rule 9013

Douglas Dymarkowski, Chapter 11 Trustee, has filed papers with the Court seeking approval of the procedures by which the Trustee will subsequently sell substantially all of the Debtor's assets by auction, free and clear of all liens, claims and encumbrances, assume and assign the Debtor's ground lease with the University of Toledo to the successful bidder, and approve procedures for the sale process and the auction, including scheduling a sale hearing to approve the sale.

**Your rights may be affected.** If you do not want the court to grant the Sale Procedures relief in the Motion without a hearing, or if you want the court to consider your views on the Motion, then within fourteen (14) days of the date hereof, *i.e.*, no later than **January 5, 2015**, you or your attorney must:

File with the court a written response explaining your position at:

U.S. Bankruptcy Court
411 U.S. Courthouse
1716 Spielbusch Avenue
Toledo, Ohio 43604

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also mail a copy to:

Patricia B. Fugée (0070698)
Roetzel & Andress, LPA
One SeaGate, Suite 1700
Toledo, OH 43624
Telephone: (419) 254-5261
Facsimile: (419) 242-0316
Email: pfugee@ralaw.com

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that motion without a hearing.

8871901 _1

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2014, a true and correct copy of the foregoing Motion to Approve Sale Procedures, Etc. (with exhibits A – F) was served via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

Robert Bassel, counsel for the Debtor, at bbassel@gmail.com

Scott R. Belhorn, Office of the U.S. Trustee, Email: Scott.R.Belhorn@usdoj.gov

Tim J. Robinson, counsel for secured creditor U.S. National Association, as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1, at tim.robinson@dinsmore.com

Douglas Dymarkowski
Chapter 11 Trustee
Doug.dadlaw@bex.net

Robert L. Doty (0047216)
Assistant Attorney General
robert.doty@ohioattorneygeneral.gov

I further certify that this Motion (with Exhibits A – F) was served via First Class, United States Mail upon all of the Debtor's creditors, at the following addresses:

Lucas County Treasurer
1 Government Center #500
Toledo, OH 43604

US Bank as Trustee
C-III Asset Management
5221 N. O'Connor Blvd Suite 600
Irving, TX 75039

American Express
ATTN: HARC 24-01-09
POB 53888
Phoenix, AZ 85072

Barkan & Robon Ltd.
1701 Woodlands Drive, Ste 100
Maumee, OH 43537

Brandt Meats
21500 Alexander Road
Cleveland, OH 44146

Brinks, Inc.
1265 Matzinger
Toledo, OH 43604

Cam Tech Industrial Svcs.
POB 55
Grand Rapids, OH 43522

Coca Cola
POB 742510
Cincinnati, OH 45274

Columbia Gas
200 Civic Center Drive
Columbus, OH 43205

Commtrack
17493 Nassau Commons
Lewes, DE 19958

15

8871901 _1

D&R Pool Sales
5016 Airport Hwy.
Toledo, OH 43615

HD Supply
POB 509058
San Diego, CA 92150

Hess
POB 905243
Charlotte, NC 28290

Hopitality Careers
6465 Greenwood Plaza #400
Centennial, CO 80111

Job 1 USA, A/R Dept.
POB 635417
Cincinnati, OH 45263

Leslie's Pools
3925 E. Broadway Rd. #100
Phoenix, AZ 85040

Mid-Continent Hotel Management
8910 University Center Ln.
San Diego, CA 92122

Morgan Services Inc.
34 10th Street
Toledo, OH 43604

Muzak of Toledo
5333 Secor Rd.
Toledo, OH 43604

Office Depot
5105 Monroe St.
Toledo, OH 43604

RSS Group
3564 Marine Rd.
Toledo, OH 43614

Service Wet Grinding
19215 Rockcliff Drive
Cleveland, OH 44146

Gues Distribution/Sysco
POB 910
Monmouth Junction, NJ 08852

Heritage Foodservice
5130 Executive Blvd.
Fort Wayne, IN 46898

Hilton Worldwide
7930 Jones Brance Dr.
Mc Lean, VA 22102

ILD Telecommunications
8401 Datapoint Drive #1000
San Antonio, TX 78229

LaSalle Cleaners
922 Jefferson Ave.
Toledo, OH 43604

Markey's Audiovisual
2365 Enterprise Park Place
Indianapolis, IN 46218

MIS Associates
4475 Peachtree Lakes Drive
Duluth, GA 30096

MT Business Technologies Inc.
POB 1754
Mansfield, OH 44901

Northern Hazerot
21500 Alexander Rd.
Cleveland, OH 44146

Ohio Excavating & Sewer
9339 W. Bancroft St.
Holland, OH 43528

SafLok, Inc.
31750 Sherman Ave.
Madison Heights, MI 48071

Teeters Products Inc.
125 E. 2nd Street
Fletcher, OH 45326

8871901 _1

Thyssenkrup
6968 McNerney Lane
Northwood, OH 43619

USA Today
305 Seaboard Lane #301
Franklin, TN 37067

Zdzislaw Iller
3012 Albany St.
Brownwood, TX 76801

Columbia Gas
290 W. Nationwide Boulevard, 5th Floor
Bankruptcy Department
Columbus, OH  43215-2852

Northern Frozen Foods, Inc.
c/o Weltman, Weinberg & Reis Co., LPA
3705 Marlane Drive
Grove City, OH  43123-8895

University of Toledo
2801 Bancroft St.
Toledo, OH 43606

Verizon Inc.
500 Technology Drive
Weldon Springs, MO 63304

I Do Chaircovers
3809 Hampstead Dr.
Sylvania, OH 43560

Ohio Department of Taxation
Bankruptcy Division
P. O. Box 530
Columbus, OH  43216-0530

Charles J. Mira
4841 Monroe Street, #350
Toledo, OH  43623-5325


*/s/ Patricia B. Fugée*
Patricia B. Fugée (0070698)
*Counsel for the Chapter 11 Trustee*

8871901 _1